[Cite as *State v. Mills*, 2012-Ohio-4387.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26310 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE STOW MUNICIPAL COURT COUNTY OF SUMMIT, OHIO CASE Nos. 2010CRB3519 |
| LAWRENCE D. MILLS | |
| Appellant | 2010CRB3520 2010CRB3521 2010CRB3522 |

DECISION AND JOURNAL ENTRY

Dated: September 26, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1}	Lawrence Mills owns a tavern in Sagamore Hills Township.  Agents of the Ohio Department of Public Safety conducted an undercover investigation at the tavern into allegations that electronic machines were being used to facilitate illegal gambling.  Mr. Mills pleaded not guilty to all charges, and the parties submitted the case to the municipal court on briefs and stipulated facts.  The municipal court convicted Mr. Mills of two counts of complicity to violate Section 2915.06(A) of the Ohio Revised Code and one count of possession of criminal tools.  Mr. Mills has appealed.  This Court reverses because the stipulated facts are not sufficient to support the convictions.

BACKGROUND

{¶2}   The Ohio Department of Public Safety charged Mr. Mills in four separate cases in Stow Municipal Court with charges stemming from an undercover investigation. The stipulated facts include twenty short paragraphs of information. The relevant facts for our purposes are that Mr. Mills was arrested after agents played Tic Tac Fruit machines at a bar that Mr. Mills owns. On two occasions, an undercover agent won multiple "Speedy Cash Fuel Card[s]" worth ten dollars each. Mr. Mills stipulated that he instructed his employees to pay Speedway fuel cards to players who won points on the skill-based amusement machines and he knew that more than one card might be awarded in any given prize because they were awarded based on the total number of accumulated points. The Speedway fuel cards could be used at Speedway gas stations, but only to purchase fuel.

{¶3}   On August 18, 2010, an agent put $20.00 into one of the machines and won and lost points before cashing out. On that date, an employee of the bar gave the agent three Speedway fuel cards. On September 28, 2010, an agent played another Tic Tac Fruit machine in the bar and received from the bartender two Speedway fuel cards when he cashed out the points he had accumulated. Two days later, the agents served a search warrant at the tavern and seized three Tic Tac Fruit machines, two Speedway fuel cards, and approximately $1732 in cash.

{¶4}   Mr. Mills pleaded not guilty to three counts of complicity to gambling in violation of Section 2915.06 of the Ohio Revised Code, one count of possession of criminal tools, and one count of public gaming. The trial court found Mr. Mills guilty of two counts of complicity to gambling and possession of criminal tools. It found him not guilty of the public gaming charge and one count of complicity. Mr. Mills attempted to appeal his convictions, but this Court

lacked jurisdiction under *State v. Baker*, 119 Ohio St. 3d 197, 2008-Ohio-3330, ¶ 1. The trial court later entered judgment, and Mr. Mills has appealed.

## COMPLICITY

{¶5} Mr. Mills' second and third assignments of error are that the trial court incorrectly found him guilty of two counts of complicity to violate Section 2915.06(A) for instructing his employees to reward players with Speedway fuel cards. At the time of the offenses, Section 2915.06(A) of the Ohio Revised Code provided that, "[n]o person shall give to another person any item described in division (BBB)(1), (2), (3), or (4) of section 2915.01 of the Revised Code in exchange for a noncash prize, toy, or novelty received as a reward for playing or operating a skill-based amusement machine or for a free or reduced-price game won on a skill-based amusement machine." R.C. 2915.06(A), effective Oct. 25, 2007.

### Skill-based Amusement Machine

{¶6} The law defined a "[s]kill-based amusement machine" as a "video, digital, or electronic device that rewards the player . . . only with merchandise prizes or with redeemable vouchers redeemable only for merchandise prizes[.]" R.C. 2915.01(AAA)(1), effective Oct. 16, 2009. The law required four conditions to be met for such a machine to qualify as a skill-based amusement machine. First, "[t]he wholesale value of a merchandise prize awarded as a result of the single play of a machine does not exceed ten dollars[.]" R.C. 2915.01(AAA)(1)(a), effective Oct. 16, 2009. Second, "[r]edeemable vouchers awarded for any single play of a machine are not redeemable for a merchandise prize with a wholesale value of more than ten dollars[.]" R.C. 2915.01(AAA)(1)(b), effective Oct. 16, 2009. Third, "[r]edeemable vouchers are not redeemable for a merchandise prize that has a wholesale value of more than ten dollars times the fewest number of single plays necessary to accrue the redeemable vouchers required to obtain

the prize[.]" R.C. 2915.01(AAA)(1)(c), effective Oct. 16, 2009. And fourth, "[a]ny redeemable vouchers or merchandise prizes are distributed at the site of the skill-based amusement machine at the time of play." R.C. 2915.01(AAA)(1)(d), effective Oct. 16, 2009. The statute further provided that "[a] device shall not be considered a skill-based amusement machine and shall be considered a slot machine if it pays cash or [meets any of the conditions listed in the statute]." R.C. 2915.01(AAA)(2), effective Oct. 16, 2009. Those conditions included, but were not limited to, circumstances in which "[t]he ability of a player to succeed at the game is impacted by the number or ratio of prior wins to prior losses of players playing the game[,]" "[a]ny reward of redeemable vouchers is not based solely on the player achieving the object of the game or the player's score[,]" and "[t]he outcome of the game, or the value of the redeemable voucher or merchandise prize awarded for winning the game, can be controlled by a source other than any player playing the game." R.C. 2915.01(AAA)(2)(a), (b), (c), effective Oct. 16, 2009.

## Ten-dollar-per-play Prize Limit

{¶7} Mr. Mills has argued in his third assignment of error that the trial court incorrectly determined that he permitted his employees to award a player multiple ten-dollar Speedway fuel cards for a single play of the machines. Mr. Mills has argued that the stipulated facts do not support the implication that the agent accumulated enough points during a single play to receive more than one Speedway fuel card. Regardless of whether the stipulated facts include evidence that the agent received more than one ten-dollar Speedway fuel card for a single play, the State has conceded that the trial court incorrectly considered the ten-dollar-per-play prize limit because that limit is part of the definition of a "[s]kill-based amusement machine" under Section 2915.01(AAA)(1). The State has acknowledged in its brief that, because it stipulated that the machines the agent played qualified as skill-based amusement machines under the statute, it, in

effect, stipulated that players did not receive more than one ten-dollar reward per play. Therefore, the State has not challenged Mr. Mills' argument regarding the ten-dollar prize limit.

Redeemable Voucher

{¶8}    Mr. Mills has argued that the stipulated facts indicate that he did not violate the statute as it existed in the fall of 2010. This is a sufficiency-of-the-evidence argument. Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005–Ohio–990, ¶ 33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of his guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶9}    Under the statute, a "[s]kill-based amusement machine" is a "video, digital, or electronic device that rewards the player . . . only with merchandise prizes or with redeemable vouchers redeemable only for merchandise prizes[.]" R.C. 2915.01(AAA)(1), effective Oct. 16, 2009. By stipulating that the machine was a "skill based amusement device[,]" the State, in effect, agreed that the machine dispensed only "merchandise prizes" or "redeemable vouchers redeemable only for merchandise prizes[.]" R.C. 2915.01(AAA)(1), effective Oct. 16, 2009. Under the statute, a "[m]erchandise prize" is "any item of value" that is not included on the list of prohibited items. R.C. 2915.01(BBB), effective Oct. 16, 2009. At the time of the investigation, the items specifically enumerated, and therefore prohibited as prizes under Section 2915.06(A), were "(1) [c]ash, gift cards, or any equivalent thereof; (2) [p]lays on games of chance, state lottery tickets, bingo, or instant bingo; (3) [f]irearms, tobacco, or alcoholic beverages; or (4) [a] redeemable voucher that is redeemable for any of the items listed in division

(BBB)(1), (2), or (3) of this section." R.C. 2915.01(BBB), effective Oct. 16, 2009. The statute defined "[r]edeemable voucher" as "any ticket, token, coupon, receipt, or other noncash representation of value." R.C. 2915.01(CCC), effective Oct. 16, 2009.

{¶10} Although the parties have framed the argument as whether the Speedway fuel cards were permissible redeemable vouchers or impermissible gift cards under the statute, that is not the question presented by the stipulated facts. The machine did not reward the player with Speedway fuel cards. The stipulated facts provide that the "skill based amusement device" in this case dispensed a paper ticket indicating a number of accumulated points. Under the statutory definition of "[s]kill-based amusement machine[,]" the paper ticket dispensed by the machine had to be either a "merchandise prize" or a "redeemable voucher[ ] redeemable only for merchandise prizes[.]" R.C. 2915.01(AAA)(1), effective Oct. 16, 2009. Given the statutory definitions of those terms, the paper ticket more closely resembled a redeemable voucher than a merchandise prize. Because the State stipulated that any redeemable voucher dispensed by the machine would be "redeemable only for merchandise prizes[,]" the State, in effect, has stipulated that the voucher was not redeemable for any item of value, including a gift card, that was specifically excluded from the statutory definition of "[m]erchandise prize[.]" R.C. 2915.01(AAA)(1), (BBB), effective Oct. 16, 2009. The parties, in effect, have agreed that the redemption of the redeemable voucher dispensed by the machine met the requirements of the statute because the State stipulated that it was "redeemable only for [permissible] merchandise prizes." *See* R.C. 2915.01(AAA)(1), effective Oct. 16, 2009.

{¶11} According to the stipulated facts, the agent played the game and received a paper ticket with a number of accumulated points printed on it, which he redeemed for multiple Speedway fuel cards. By stipulation, the Speedway fuel cards were proper rewards provided by

a "[s]kill-based amusement machine," that is, they were permissible "merchandise prizes" because, according to the stipulated facts, any redeemable voucher awarded by the machine was "redeemable only for merchandise prizes." R.C. 2915.01(AAA)(1), effective Oct. 16, 2009. Therefore, there was insufficient evidence that Mr. Mills instructed his employees to give a player "any item described in division (BBB)(1), (2), (3), or (4) of section 2915.01 of the Revised Code in exchange for a noncash prize, toy, or novelty received as a reward for playing or operating a skill-based amusement machine . . . ." R.C. 2915.06(A), effective Oct. 25, 2007. Regardless of whether the Speedway fuel cards could be considered to be a "noncash prize, toy, or novelty" under the statute, there was no evidence that the agent exchanged the Speedway fuel cards for "any item described in division (BBB)(1), (2), (3), or (4) of section 2915.01 of the Revised Code . . . ." Mr. Mills' second and third assignments of error are sustained.

## POSSESSION OF CRIMINAL TOOLS

{¶12} Mr. Mills' fourth assignment of error is that his conviction for possession of criminal tools is not based on sufficient evidence because there is no evidence that he possessed the machines with a purpose to use them criminally. Under Section 2923.24(A), "[n]o person shall possess . . . any . . . device . . . with purpose to use it criminally." As there is not sufficient evidence to support Mr. Mills' convictions for complicity to violate Section 2915.06(A), there is no evidence that he possessed the "skill-based amusement machines" with a purpose to use them criminally. His fourth assignment of error is sustained.

{¶13} Mr. Mills' fifth assignment of error is that he should have been charged under the more specific statute for possession of gambling devices rather than the general statute for possession of criminal tools. *Compare* R.C. 2915.02(A)(5), 2923.24(A). This assignment of error is moot in light of our disposition of assignment of error number four. His first assignment

of error is that the trial court incorrectly denied his motion to suppress all evidence gathered by the Ohio Department of Public Safety because agents of that department do not have authority to investigate "violations of general criminality contained in [Ohio Revised Code] Chapter 2915." This assignment of error is moot in light of our disposition of assignments of error two, three, and four.

## CONCLUSION

{¶14} Mr. Mills' second, third, and fourth assignments of error are sustained because the stipulation of facts did not provide sufficient evidence to support his convictions for possession of criminal tools or complicity to violate Section 2915.06(A) of the Ohio Revised Code. His first and fifth assignments of error are moot based on our disposition of the other assignments of error. The judgment of the Stow Municipal Court is reversed.

Judgment reversed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

KURT O. GEARHISER, Attorney at Law, for Appellant.

AMBER E. KEREK, Prosecuting Attorney, for Appellee.